## M. A. COAPLAND V. JOE LAKE AND WIFE.
### No. 411.

1. **Evidence—Opinion as to Value.**—The testimony of a tenant for life as to what he considers the value of his interest in the property is not rendered inadmissible because he further states, that he would take such estimated value for it.

2. **Will—Demonstrative Devise—Contribution.**—Where one of two equal devisees is dispossessed by a paramount title of a part of his devise, he is entitled only to a money contribution from the other of one-half the actual value of the part of which he is so dispossessed, and not to a recovery of such an undivided interest in the other's part as that amount of money would represent.

3. **Life Estate—Value of, How Determined.**—See the opinion for special issues and evidence improperly submitted in determining the value of a life estate in real property.

APPEAL from Harrison. Tried below before Hon. W. J. GRAHAM.

*F. H. Prendergast*, for appellant.—1. The court erred in overruling defendant's third special exception, because the failure of title to the Jones lot did not vest in Mrs. Lake title to any portion of land set apart in the will to Mrs. Coapland.

2. The court erred in refusing the special charge asked by defendant, as follows: "In arriving at the amount of your verdict, you will first find the value of the estate that Mrs. Lake secured in the compromise with Jones, in August, 1889, and then deduct this value from $2490, and find a verdict for the remainder."

3. The court erred in the fourth paragraph of the charge, in telling the jury to find the value of an annuity which would yield as much as the net annual rental value of the Jones lot, to run for a period equal to the life expectancy of Jones and wife, from August 29, 1889. This was error, because no rate of interest is specified to guide the jury, and there was no evidence of any rate of interest, and because not material.

4. The court erred in not granting defendant's motion in arrest of judgment, because the verdict does not find any facts upon which a legal judgment could be rendered. Mechan v. Randle, 66 Texas, 282.

*T. P. Young*, for appellees.—1. The special instruction, in view of appellant's admissions and the facts established, was inapplicable, and furnished the jury no method of computing the loss sustained by Mrs. Lake. As applied to the facts, the measure of liability stated in the special instruction was the difference between nothing and $2490, which was manifestly incorrect.

2. The fact that the jury made incorrect findings, evidently based on illegal testimony, would not prevent the court from adopting, as the basis of the judgment, a correct finding on the same subject.

LIGHTFOOT, CHIEF JUSTICE.—W. M. Coapland died in September, 1888, leaving his last will and testament, which was duly probated, and was substantially as follows:

"1. I desire that all my debts, which consist, so far as I remember, solely of my drug bills, doctors' bills, and monthly store accounts, be paid by the beneficiaries of my will, hereinafter named, and they each pay one-half of said sums, including funeral expenses.

"2. I desire that all my property, real, personal, and mixed, shall be divided equally, share and share alike, between my beloved wife, Mildred Ann Coapland, and my beloved daughter, Mary W. Lake, to be divided between them as hereinafter stated.

"3. I will, devise, and bequeath to my beloved wife the following described property: One note on Blain Alston, for about $560; note on John Henderson, about $85; note on Bob Gause, for about $116; note on Hollis and J. F. Taylor, about $285; note on Bob Wilcox, about $125; note on Butler (colored), about $280. Also, three one-story brick storehouses in Marshall, Texas, on the north side of Austin street, adjoining each other, and being the stores between the drugstore occupied by Dr. G. M. Phillips and the store occupied by Logan & Whaley, which said stores are by me valued, and to be taken by my wife, at the estimated price of $3500 each, and at the aggregate price of $10,500. I also will and devise to my said wife the homestead place where we now live, which homestead she is to take at the estimated value of $2900.

"4. When all the notes above mentioned in item 3 of this will are collected, I desire and direct that there shall be paid out of the proceeds of the same the sum of $426.50 (in order to make an equal division between my wife and daughter) to my daughter, Mrs. Mary W. Lake.

"5. The proceeds on the notes of Jake Nighton, on which there is due about $20, and on J. T. Hunter, on which there is due about $400, are to be divided equally between my wife and daughter, if all, or any portion of either or both, be collected.

"6. I will, devise, and bequeath to my beloved daughter, Mrs. Mary W. Lake, wife of Joe Lake, the following described property: One note on Joe Lake, dated December 12, 1884, due twelve months from date, drawing 8 per cent interest from date, on which there is a

credit of $75, the price of our cow, on which note there is now due the sum of $3790.33; one note on Mrs. Cornelia Scott, for about $75; *also the lot, and dwelling house thereon, now occupied by W. M. Jones, and rented by him from me, which house and lot is to be taken at the estimated price of two thousand four hundred and ninety ($2490) dollars;* also the house and lot fronting on Bolivar street, and between the drugstore now occupied by G. M. Phillips and the W. M. Jones house and lot, the latter to be valued and taken at the price of $1500; also, lot and house thereon situated north of Joe Lake's residence, and part of said residence lot, the last house and lot taken and valued at $600; also, fifty-six acres of land lying south of, and off the south end of the Miller plantation, about two and one-half miles east of the city of Marshall, valued by me, and to be taken, at the price of $448. I give also to my daughter the sum of $5000 in money; that is to say: I have already given and delivered to her said sum of money ($5000), which I charge her now as being a portion of the half of my property, by which I mean I now give her the one-half of my property, considering said $5000 as now given.

"7.   I have now in bank the sum of $1052.62, out of which, or out of what portion of that sum that may remain, if any, at my death, I desire that Mrs. Lake, my daughter, be paid the sum of $95, and the balance to be equally divided between my wife and daughter; if at my death none of it remain, then I desire and direct that my wife pay to my daughter said sum of $95.

"8.   All my household and kitchen furniture, and the stock on my place, including piano as part of furniture, I give and bequeath to my beloved wife."

W. M. Jones and wife claimed the Jones lot adversely to the Coapland estate, and Joe Lake and his wife sued Jones and wife for the lot, and on August 29, 1889, the suit was compromised by an agreed judgment.   Jones and wife took a life estate in the lot, and after the death of Jones and wife, Mrs. Lake to have the remainder.   Mrs. Coapland was not a party to that suit.   It was proved in this case, that the Jones lot was deeded by W. M. Jones and wife to W. M. Coapland, in March, 1883, and about the same time Coapland executed to them a defeasance, agreeing to reconvey the land on payment of $1800, and interest; that the deed was intended as a mortgage, and that at the time it was made the property was the homestead of Jones and wife, and had remained so ever since—so that there was really no valid title to the property in W. M. Coapland at the time of his death; and it was admitted that the facts justified the compromise.

This is the second appeal of this case, the same having been formerly appealed from the judgment of the court below in sustaining a demurrer to the plaintiff's petition.   The case is reported in 82 Texas, 464 (Lake v. Coapland).   It was held by the Supreme Court, upon a construction of the will, that the devises of the real property specified therein were demonstrative, and that appellee, having lost a part of

the property willed to her, is entitled to recover; but the court is not clear in its opinion as to the character of the recovery to which appellee is entitled—whether to an undivided interest in the property willed to appellant, Mrs. Coapland, or to contribution in the way of a judgment against her for one-half the value of the property lost. The court below, upon the last trial, submitted special issues to the jury, and upon their finding of the value of an annuity for the terms of the lives of Jones and wife based upon the present rental value of the Jones property, and the expectancy upon such lives from the annuity tables, found the value of their annuity to be $2363.73, and rendered judgment against appellant for $\frac{1181}{14424}$ part of the property devised to her, together with $169.95 rents—the numerator of the fraction above being intended to represent one-half the value of the annuity of Jones and wife.

There are many questions raised by counsel for the respective parties which we do not deem it necessary for us to discuss in order to reach a satisfactory solution of the questions involved. In the discussion of the questions, we assume that the points are fully settled by the Supreme Court on the former appeal: (1) That the devise to appellee of the Jones place has been authoritatively construed to be a demonstrative devise; (2) that having lost a portion of it, appellee is entitled to contribution from Mrs. Coapland. Lake v. Coapland, 82 Texas, 464; Gallagher v. Redmond, 64 Texas, 622. The writer is free to confess that if the question were an open one he would be inclined to hold, under the common law rule, that notwithstanding the purpose of the testator to make an equal division of his property, the devises of the specific tracts of land to the separate parties, valued at fixed sums for the purpose of showing the equality, were intended to vest the titles to such specific tracts in the several devisees; and hence, were specific devises. Mr. Pomeroy seems to think, that "every devise of land is essentially specific." 3 Pom., sec. 1136, and note. See also 13 Am. and Eng. Encyc. of Law, p. 12, note 9; 2 Redf. on Wills, pp. 136, 141. But we regard the question in this case as settled otherwise by our Supreme Court.

Among the numerous assignments of error, we find the following: "The court erred in rendering judgment for plaintiffs for an interest in defendant's land equal to one-half of $2363.76."

"10. The court erred in not rendering judgment for $615, that being one-half the value of the life estate of Jones and wife to the Jones lot, as found by the jury."

According to the finding and judgment below, the interest of Jones and wife is fixed at $2363.76, which is $113.73 more than is claimed in plaintiffs' petition. The whole of the Jones property was only valued in the will at $2490, and if the judgment is correct, the life estate of two old people (one of them over 62 years, and the other over 66 years of age) is worth within $126.27 of the fee simple title. The value of such an estate can not be accurately fixed at all times by confining

the testimony to the annuity tables, because, if fixed upon the basis of annual rents, they are fluctuating and uncertain, and rentals upon that character of property may at any time cease, even if proper calculations are made for insurance, wear and tear, taxes, etc. It is like any .other question of fact to be determined by the jury, and the court should allow any legitimate testimony tending to show the value of such life estate. In this connection, the appellees in their cross-assignment of error object to the testimony of Jones as to the value of his life estate, because he testified as follows: "My wife and I have agreed to take $1000 for our interest in the Jones lot (our life estate), and that is what I consider it worth." What they would take for the interest might not always be a fair estimate of its worth; but the witness goes further than that, and says, "that is what I consider it worth." This testimony gives the estimate of the witness of the value of the interest, and the fact that they are willing to take what he considers it worth does not detract from the force of his testimony, or render it inadmissible as evidence. The court in submitting the issues to the jury seems to divide the question, and submits, separately (1) the value of an annuity upon the lives of the old people; (2) the value of the life estate of Jones and wife in the Jones lot, not considering the testimony of Jones as to what they would take for it; (3) the value of such life estate, fixed wholly upon the testimony of Jones. The verdict of the jury finds the annuity on the life of Mr. Jones worth $1926.96, and the annuity of Mrs. Jones worth $2363.76; and says, further: "In answer to inquiry five, (1) the cash value of the life estate of W. M. Jones and wife to be $1230.05. The cash value of the life estate of W. M. Jones and wife to be $1000." Both the charge and the verdict, as well as the judgment thereon, were objected to, and errors thereon assigned.

The issue to be determined was simple and clear, and it should have been submitted to the jury without complication: What is the cash value of the life estate of Jones and wife in the Jones lot? In determining that issue, all legitimate testimony should have been admitted, and no part of it excluded. The issue can not be separated and submitted to the jury, first, admitting certain testimony, and second excluding it; and the verdict rendered in response to the charge is too uncertain to form the basis of a correct judgment. The verdict finds the value of the life estate to be worth $1230.05, and at the same time finds it to be worth $1000. Which of these is intended as the correct amount? If the same issue had been submitted upon all the legitimate testimony before them, the jury might not have found either amount as the correct value.

We think the court erred in rendering judgment against appellant for a fractional portion of her entire interest in the estate, with rents upon the same. If appellees are entitled to recover by reason of having lost a portion of the property willed to Mrs. Lake, it is only for a contribution from appellant to the extent of one-half of such loss,

to be estimated in the *value* of the portion lost. It does not authorize a specific recovery of a portion of Mrs. Coapland's property, nor rents upon the same; nor is it necessary in such a case to inquire into the values of any other properties devised to either party, or their rentals. The inquiry should be limited to the legitimate issues in determining whether or not appellee lost a portion of the property devised to her by reason of a defective title; and if so, the value of the property so lost.

For the errors above mentioned, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered October 1, 1894.